3RD JUDICIAL DISTRICT COURT
DONA ANA COUNTY NM
FILED IN MY OFFICE
5/2/2017 3:36:57 PM
CLAUDE BOWMAN
Denika Frank

THIRD JUDICIAL DISTRICT
COUNTY OF DONA ANA
STATE OF NEW MEXICO

RUBEN O. FAVELA,
      Plaintiff,
v.

CITY OF LAS CRUCES ex rel. LAS CRUCES
POLICE DEPARTMENT, LAS CRUCES POLICE
OFFICERS Matthew Dollar and Manuel Soto,
PHC-LAS CRUCES, INC., a New Mexico Corporation,
dba MEMORIAL MEDICAL CENTER, Danielle Wilhelm, M.D.,
James Proctor, R.N., Jamie Pitts, R.N., Jose Reveles, R.N.,
Cassandria Branch, R.N., and John Doe Security Guards 1 and 2,
      Defendants.

CASE NO. D-0307-CV-2017- D-307-CV-2017-0123
Judge: Arrieta, Manuel I.

## COMPLAINT TO RECOVER DAMAGES FOR
## DEPRIVATION OF CIVIL RIGHTS AND PERSONAL INJURY

COMES NOW the Plaintiff Ruben O. Favela, through his attorney, Jose R. Coronado, and submits his Complaint against Defendants CITY OF LAS CRUCES EX REL. LAS CRUCES POLICE DEPARTMENT, LAS CRUCES POLICE, OFFICERS Matthew Dollar and Manuel Soto, PHC-LAS CRUCES, INC., a New Mexico Corporation, dba MEMORIAL MEDICAL CENTER, DANIELLE WILHELM, M.D., JAMES PROCTOR, R.N., JAMIE PITTS, R.N., JOSE REVELES, R.N., CASSANDRIA BRANCH, R.N., and JOHN DOE SECURITY GUARDS 1 and 2.

### PARTIES, JURISDICTION AND VENUE

1.    Plaintiff Ruben O. Favela is an individual who is a resident of Las Cruces, Dona Ana County, State of New Mexico.

2.    Defendant City of Las Cruces is a municipality in the State of New Mexico.

[1]

### EXHIBIT A

3.     Defendant Dollar is a law enforcement officer for the City of Las Cruces. Defendant was acting under color of state law and in the course and scope of his employment as a law enforcement officer with the City of Las Cruces at all times material.

4.     Defendant Soto is a law enforcement officer for the City of Las Cruces. Defendant was acting under color of state law and in the course and scope of his employment as a law enforcement officer with the City of Las Cruces at all times material.

5.     Defendant PHC-Las Cruces, Inc., dba Memorial Medical Center, (hereinafter "MMC"), is a New Mexico corporation with its principle place of business in Las Cruces, New Mexico.

6.     Defendant MMC, through its agents, acted at the request of Defendant police officers to aid law enforcement to forcefully perform a medical procedure on Plaintiff that had no medical purpose.

7.     Defendant Danielle Wilhelm, M.D., is a resident of Las Cruces and was a resident of the County of Dona Ana, State of New Mexico, on the date of the complaint at issue. Defendant Wilhelm was an employee of Defendant MMC on the date of the issue complained of herein.

8.     Defendant Wilhelm, M.D., was acting as Defendant MMC's agent at all times material, was acting under of state law, and acted at the request of law enforcement to aid law enforcement perform a medical procedure that had no medical purpose.

9.     Defendant James Proctor R.N., was an employee of Defendant MMC on the date of the issue complained of herein.

10.     Defendant Jamie Pitts R.N., was an employee of Defendant MMC on the date of the issue complained of herein.

[2]

11.    Defendant Jose Reveles, R.N., was an employee of Defendant MMC on the date of the issue complained of herein.

12.    Defendant Cassandria Branch, R.N., was an employee of Defendant MMC on the date of the issue complained of herein.

13.    Defendant John Doe security guards were employees of Defendant MMC on the date of the issue complained of herein.

## FACTUAL BACKGROUND

14.    On or about April 13, 2016 at approximately 6:49 p.m., Plaintiff was driving his motorcycle when he was stopped by Defendant Matthew Dollar for running a red light and speeding.

15.    Defendant Dollar ordered Plaintiff to turn off his motorcycle so that Defendant Dollar could conduct a pat down search of Plaintiff for officer safety.

16.    Defendant Dollar secured Plaintiff with handcuffs and conducted a pat down search of his person.

17.    Defendant Dollar found a handgun in Plaintiff's waistband. He secured it and placed it in his patrol car.

18.    Plaintiff was placed in the back seat of Defendant Dollar's patrol car. He began to sweat profusely. He eventually lost consciousness due to the lack of fresh.

19.    Defendant Dollar did a preliminary background check on Plaintiff, and learned that Plaintiff had been convicted of a felony offense.

20.    Defendant Dollar called Sgt. Tate McBride to tell him what he had learned about the felony conviction. Sgt. McBride told Defendant Dollar he would contact the criminal investigations

[3]

division to have them come to the scene to conduct an investigation into the felony crime.

21.     Plaintiff was not conscious at the scene, so emergency medical personnel were called. Those personnel transported Plaintiff to MMC.

22.     Just before Plaintiff was transported to MMC Defendant Dollar told emergency personnel that Plaintiff was under arrest for Felon In Possession of a Firearm.

23.     Defendant Soto followed Plaintiff to MMC to stand by Plaintiff, "while the investigation was ongoing."

24.     Plaintiff was taken to MMC "for further medical evaluation and treatment."

25.     Criminal detectives Gil Mora and Edward Villareal arrived at the scene of the traffic stop. They told Defendant Dollar that because they did not know the outcome of the previous felony charge, Plaintiff, "would be released at this time."

26.     When Plaintiff arrived at MMC he was placed in Room 18. He was secured to a mattress that was on the floor of Room 18. Defendant Soto used his Las Cruces Police Department issued handcuffs to handcuff Plaintiff to the bed in Room 18.

27.     Several unknown MMC male hospital employees and/or independent contractors who are yet to be identified, and a male MMC security guard who is yet to be identified, stood by the door of Room 18.

28.     An MMC male Defendant employee told Plaintiff that he was going to draw blood from Plaintiff, "to clear you for contaminants."

29.      Plaintiff was calm and rational, and asked the MMC male Defendant employees reasonable questions about what they intended to do.

[4]

30.     When Plaintiff asked why they had to draw blood from him, an MMC male Defendant employee turned and addressed Defendant Soto. The MMC male Defendant employee then turned and told Plaintiff that he was under arrest and he couldn't go to jail until he was cleared by a doctor.

31.     Plaintiff asked the MMC male Defendant employee why he was under arrest, and the MMC male Defendant employee said that that was between him (Plaintiff) and the Defendant Soto.

32.     Plaintiff told the MMC male Defendant employees that he did not want to provide a urine sample to them.

33.     A male MMC Defendant employee told Plaintiff this was his opportunity to urinate; if he chose not to urinate, "we will cath you when they get here." He also told Plaintiff that, "the doctor's put the order in. This is your opportunity. We're gonna cath you like he's been explaining."

34.     Plaintiff asked a male MMC Defendant employee what cath meant.

35.     Another male MMC Defendant employee answered, "They're gonna stick a tube up your penis if you don't give them a urine sample, plain and simple."

36.     Plaintiff became upset and anxious, and began to yell.

37.     Five MMC male Defendant employees, along with an unidentified Defendant security guard and an unidentified Defendant police officer (believed to be Defendant Soto), marched one by one into Room 18.

38.     Five MMC male Defendant employees and the Defendant security guard got on top of Plaintiff to physically restrain him.

39.     Defendant Soto stood guard inside the door of Room 18 and watched.

40.     The five male MMC employee Defendants and the Defendant security guard forcefully

grabbed Plaintiff by his legs and arms, and used their upper bodies and legs to restrain Plaintiff's torso tight so that Plaintiff could not move.

41.     Plaintiff, still handcuffed to the hospital mattress, tried to get free. He began to sob. He yelled, "What the f____k did I do? I'm sorry for whatever I did. I'm sorry. Please let me go."

42.     The five male MMC employee Defendants and the Defendant security guard did not let Plaintiff go. They increased their force to restrain Plaintiff.

43.     One of the male MMC Defendant employees asked Defendant Officer Soto to remove Plaintiff from the police issued handcuffs, because the five male MMC employee Defendants and the Defendant security guard were having a difficult time turning and restraining Plaintiff with the police issued handcuffs.

44.     After Defendant Officer Soto released Plaintiff from the police issued handcuffs, one or more of the five male MMC employee Defendants handcuffed Plaintiff to the bed with four "mild restraints", one for each of Plaintiff's wrists and one for each of his ankles.

45.     Plaintiff was sobbing and, saying, "I'm just f_____king scared." He said this several times. He also told these Defendants that he could not breathe.

46.     A female MMC Defendant employee entered Room 18 with a straight catheter. As the MMC male employee Defendants and the Defendant security guard held Plaintiff down, the female MMC employee Defendant used the straight catheter on Plaintiff to extract urine from his penis.

47.     During this time Defendant Officer Soto received a cell telephone call from an unknown person believed to be another Las Cruces police officer.

[6]

48.     Defendant Soto was heard making the following statements in reference to Plaintiff:

A.      "He said he's not gonna charge him."

B.      " . . .  make sure it was not deferred or anything.   Because if the charge was deferred or something . . . uh, it doesn't stick, or something like that."

C.      "Uhm, you wanna call Gil, he'll tell you, but they're struggling over here getting a (unintelligible) sample in the catheter."

D.      "It's up to you especially if the jail's not gonna take him. Did he come back clear on the A1?"

E.      "Did he have any warrants? No?"

F.      "He don't have an obstruction or evading?"

G.      "You can charge him with obstruction."

H.      "You want him to go to jail, or . . . ."

I.      "Well, he's over here fighting for a urine sample."

49.     The five male MMC employee Defendants, the Defendant security guard, and the female MMC employee Defendant succeeded over Plaintiff's protestations in extracting a urine sample from Plaintiff's penis.

50.     The extraction occurred at approximately 9:42 p.m. Plaintiff was discharged from MMC "ambulatory" and with a friend, at approximately 12:06 a.m.

51.     Plaintiff was subjected to an unnecessary medical procedure to draw a urine sample against his will.

52.     Plaintiff never consented to the use of a straight catheter or to any other medical procedure to remove urine from his penis.

[7]

53.     The extraction of urine from Plaintiff's penis was done without a search warrant.

54.     Defendant Wilhelm, M.D., agreed with Defendant Officer Soto and the other Defendants to perform the warrantless urine extraction.

55.     Defendant Wilhelm, M.D. was the admitting emergency room physician.

56.     Defendant Wilhelm, M.D. ordered the catheterization of Plaintiff of her own accord and/or at the direction of law enforcement.

57.     Defendant female MMC employee forced the straight catheter tube into Plaintiff's penis while Plaintiff protested aloud and asked Defendants not to hurt him.

58.     The extraction targeted an area of Plaintiff which is the most personal and private part of his body.

59.     The insertion of the straight catheter tube in Plaintiff's penis was invasive and an intrusion of his personal privacy.

60.     Defendant MMC billed Plaintiff for the "medical services" it provided to him.

61.     Defendant MMC employees and Soto intentionally or recklessly humiliated Plaintiff by orchestrating a probing invasive medical procedure--the straight catheterization--without probable cause to believe that Plaintiff had an illegal substance in his body.

62.     Plaintiff suffered extreme and severe emotional distress and physical pain and injury as a result of Defendants' conduct.

### COUNT I - UNREASONABLE SEARCH AND SEIZURE
### (APRIL 13, 2016 TRAFFIC STOP RE: ARREST)
### (Against Defendant City of Las Cruces and the Corresponding Police Officers)

Plaintiff incorporates the preceding paragraphs by reference herein.

[8]

63.     As a result of the "routine" traffic stop, Defendant Officers Dollar and Soto held Plaintiff in custody from about 6:49 P.M. until 12:04 A.M.

64.     Defendant Officers Dollar and Soto detained Plaintiff for such an unreasonable amount of time that they constructively placed Plaintiff under arrest.

65.     During this arrest, Plaintiff was handcuffed and taken to MMC under pretense of medical evaluation and treatment in order to conduct a further search of his person.

66.     Defendant Officers Dollar and Soto lacked probable cause to arrest Plaintiff for illegal substances.

67.     Defendant Officers Dollar and Soto did not obtain a warrant to conduct a search Plaintiff at the emergency room of MMC.

68.     Defendant Officers Dollar and Soto deprived Plaintiff of his Fourth Amendment rights to be secure in his person by arresting him in order to conduct further searches.

69.     The arrest of Plaintiff was wrongful, without probable cause and deprived Plaintiff of his Fourth Amendment right to be free of unreasonable seizures.

70.     The actions of Defendant Officers Dollar and Soto proximately caused damages to Plaintiff in loss of liberty, embarrassment, humiliation, pain and suffering and mental and emotional distress.

71.     Defendant Officers Dollar and Soto acted willfully, knowingly and purposefully and/or with deliberate indifference to deprive Plaintiff of his Constitutional Rights. As a result of Defendants' conduct, Plaintiff is entitled to recover punitive damages against the individual Defendants.

[9]

72.     The execution of the body search of Plaintiff was wrongful, without probable cause and deprived Plaintiff of his Fourth Amendment right to be free of unreasonable seizures.

73.     The actions of Defendants proximately caused damages to Plaintiff in loss of liberty, embarrassment, humiliation, pain and suffering and mental and emotional distress.

74.     As a result of Defendants' conduct, Plaintiff is entitled to recover punitive damages against the individual Defendants.

### COUNT II - UNREASONABLE SEARCH AND SEIZURE
### (MEDICAL PROCEDURE)
### (Against Defendant Police Officers, MMC, and MMC Personnel)

Plaintiff incorporates the preceding paragraphs by reference herein.

75.     Defendant Officers Dollar and Soto were acting under the color of state law when they wrongfully and without probable cause conspired with MMC defendants to forcibly penetrate Plaintiff's penis with a straight catheter to extract urine.

76.     Defendants Police Officers, Defendant MMC, and Defendant MMC Personnel (herein after, Defendants) did not reasonably rely on law enforcement authority and/or the validity of an arrest to forcefully insert a straight catheter into Plaintiff's penis.

77.     Defendants' acts were objectively unreasonable.

78.     Defendants' acts violated Plaintiff's Fourth Amendment rights to be secure in his person from unreasonable search and seizures.

79.     Defendants' deprivation of Plaintiff's rights caused Plaintiff damages.

80.     Defendants acted willfully, knowingly and purposefully and/or with deliberate indifference to deprive Plaintiff of his Constitutional Rights. As a result of Defendants' conduct, Plaintiff is

[10]

entitled to recover punitive damages against the individual Defendants.

## COUNT III- UNREASONABLE SEARCH AND SEIZURE
### (CATHETERIZATION)
### (Against Defendant Police Officers, MMC, and MMC Personnel)

Plaintiff incorporates the preceding paragraphs by reference herein.

81.    Defendants Dollar, Soto, Wilhelm, M.D., MMC, and MMC Personnel (herein after Defendants) were acting jointly and severally under the color of state law when they wrongfully and without probable cause, extracted Plaintiff's urine using forced straight catheterization.

82.    Defendants did not have a warrant to execute a search for the invasive medical procedure to extract urine from Plaintiff.

83.    Defendants' acts were objectively unreasonable.

84.    Defendants' acts violated Plaintiff's Fourth Amendment rights to be secure in his person from unreasonable search and seizures.

85.    Defendants' deprivation of Plaintiffs rights caused Plaintiff damages.

86.    Defendants acted willfully, knowingly and purposefully and/or with deliberate indifference to deprive Plaintiff of his Constitutional Rights. As a result of Defendants' conduct, Plaintiff is entitled to recover punitive damages against the individual Defendants.

## COUNT IV - NEGLIGENCE
### (Against Defendants MMC,
### Medical Personnel, and Wilhelm, M.D.)

Plaintiff incorporates the preceding paragraphs by reference herein.

87.    Defendants MMC, Wilhelm, M.D., and MMC Personnel (herein after Defendants) acted jointly and severally when they wrongfully, without medical consent and without probable cause, confiscated Plaintiff's bodily fluids using forced straight catheterization.

[11]

88.    Defendants owed Plaintiff a duty of care conforming to professional standards.

89.    Defendants breached that duty of care and failed to conform to the professional standards by performing an unnecessary medical procedure on Plaintiff. The breached duty and breached professional standard is evidenced by at least the following:

    (a)    an invasive medical procedure;

    (b)     lack of informed consent;

    (c)     assault and battery;

    (d)     false imprisonment;

    (e)     forced catheterization;

    (f)     forced straight catheterization to aid and abet police searches.

90.    As a result of Defendants' breach of duty, Plaintiff suffered damages, including but not limited to: emotional distress, pain and suffering and uneccessary medical bills that these Defendants demand from Plaintiff.

91.    Defendant medical employees' conduct was malicious and/or in reckless disregard of Plaintiff's rights, and Plaintiff is entitled to punitive damages.

92.    Defendants injured Plaintiff in an amount to be proven at trial.

**WHEREFORE,** Plaintiff prays judgment against Defendant Wilhelm, M.D., MMC, and MMC Personnel, jointly and severally, in an amount to be proven at trial, for costs, and for such other relief as is proper.

### COUNT V - LACK OF INFORMED CONSENT
### (Against Defendants MMC and Wilhelm, M.D.)

The Plaintiff incorporates the preceding paragraphs by reference herein.

[12]

93.     Defendants MMC and Wilhelm, M.D., were required to obtain Plaintiff's informed consent for treatment, and to inform him of sufficient facts to enable him to intelligently consent to treatment. *Cooper v. Curry,* 92 N.M. 417, 419, 589 P.2d 201, 203 (Ct. App. 1978).

94.     Defendants failed to obtain Plaintiff's consent to treatment, or in the alternative knew, or should have known that Plaintiff did not consent to or revoked his consent for treatment.

95.     Defendants knew or should have known that any alleged consent Plaintiff gave them was made under duress and/or revoked by Plaintiff prior to treatment.

96.     Defendants' failure to obtain informed consent was negligent and failed to comport with professional standards.

97.     As a result of Defendants' conduct Plaintiff suffered damages.

98.     Defendants' conduct was malicious and/or reckless, and Plaintiff is entitled to punitive damages.

### COUNT VI – INDEPENDENT CONTRACTOR DOCTOR
### (Against Defendant MMC)

The Plaintiff incorporates the preceding paragraphs by reference herein.

99.     If Defendant Wilhelm, M.D., was not an employee of Defendant MMC, then Defendant MMC was negligent in the selection and retention of her as a staff physician, and was negligent in granting her staff privileges, when Defendant MMC knew, or in the exercise of the care required should have known, that Defendant Wilhelm M.D. did not possess, exhibit, or utilize the skill and care required of an emergency room doctor in a hospital.

100.     Alternatively, Defendant MMC was negligent in failing to supervise Defendant Wilhelm, M.D., and failed to determine whether she possessed the skill and care required of an emergency

[13]

room doctor in a hospital.

**WHEREFORE,** plaintiff prays judgment against Defendant MMC in an amount to be proven at jury trial, costs, and such other relief as is proper.

### COUNT VII - VIOLATION OF THE UNFAIR PRACTICES ACT
### (Against Defendants MMC and Wilhelm, M.D.)

The Plaintiff incorporates the preceding paragraphs by reference herein.

101.    Defendants MMC and Wilhelm, M.D., are individuals and/or a company engaging in commerce by providing services and are bound to the Unfair Practices Act.

102.    Defendants MMC and Wilhelm, M.D., are prohibited from engaging in unconscionable trade practices including acts or practices that are in connection with the sale of services which "takes advantage of the lack of knowledge, ability, experience or capacity of a person to a grossly unfair degree." *N.M.S.A. 1978 § 57-12-2.*

103.    Plaintiff had the capacity to refuse Defendants' services, and did refuse them. The services were not performed at Plaintiff's request, yet Defendant MMC billed Plaintiff for the services.

104.    Defendants MMC and Wilhelm, M.D., violated the *Unfair Practices Act* when they performed a medical service that Plaintiff refused.

105.    As a result of Defendants' actions, Plaintiff suffered actual damages.

106.    Defendants willfully engaged in an unconscionable trade practice, and Plaintiff is entitled to treble damages. *N.M.S.A 1978 § 57-12-10.*

107.    Plaintiff is entitled to attorney's fees and costs.

### COUNT VIII – ASSAULT AND BATTERY
### (Against Defendants Soto, MMC, Wilhelm, M.D., and MMC Personnel)

Plaintiff incorporates the preceding paragraphs by reference herein.

[14]

108.     Defendants intentionally physically penetrated, or caused to be penetrated, a straight catheter into Plaintiff's penis for the sole purpose of forcibly extracting urine from him.

109.     Defendants caused offensive contact with Plaintiff's person.

110.     Defendants' conduct constituted assault and battery on Plaintiff.

111.     Defendants acted together in a concerted effort to cause the assault and battery.

112.     As a result of the assault and battery, Plaintiff suffered damages.

**COUNT IX - FALSE IMPRISONMENT**
**(Against Defendants Soto, MMC, Wilhelm, M.D., and MMC Personnel)**

Plaintiff incorporates the preceding paragraphs by reference herein.

113.     Defendants intentionally confined Plaintiff in Room 18 without consent.

114.     Defendants knew, or should have known, that they had no lawful authority to detain Plaintiff without a valid arrest or consent.

115.     Defendants confined Plaintiff unlawfully from approximately 6:49 PM on April 13, 2016 until he was discharged from the hospital at or around 12:04 AM on April 14, 2016.

116.     Defendants' conduct constituted false imprisonment of Plaintiff.

117.     As a result of the false imprisonment, Plaintiff suffered damages.

**REQUEST FOR RELIEF**

Plaintiff incorporates the preceding paragraphs by reference herein.

**WHEREFORE,** Plaintiff seeks the following relief:

I.       Actual and compensatory damages sufficient to make him whole.

II.      Punitive damages against Defendants sufficient to punish them and to deter further wrongdoing;

[15]

III.     Treble damages;

IV.      Attorneys' fees, litigation expenses, costs, pre-and post-judgment interest as

provided by law; and

V.       Such other and further relief as the Court deems just and proper.

Respectfully submitted by:

/s/ Jose R. Coronado
JOSE R. CORONADO
Attorney for Plaintiffs
119 N. Main Street
Las Cruces, New Mexico 88001
(575) 525-2517 - Phone
(575) 525-2518 - Fax
Cjr1138@qwestoffice.net

3RD JUDICIAL DISTRICT COURT
DOÑA ANA COUNTY NM
FILED IN MY OFFICE
5/3/2017 9:59:17 AM
CLAUDE BOWMAN
Denika Frank

STATE OF NEW MEXICO
COUNTY OF DOÑA ANA
THIRD JUDICIAL DISTRICT COURT

RUBEN O. FAVELA,

                Plaintiff,

V.

                                        Case No.   CV-2017-01233

                                        Judge ARRIETA

CITY OF LAS CRUCES ex rel. LAS CRUCES
POLICE DEPARTMENT, ET AL.,

## ORDER REQUIRING SCHEDULING REPORTS, A DISCOVERY PLAN, EXPERT WITNESS DISCLOSURE, AND LIMITING STIPULATIONS TO ENLARGE TIME FOR RESPONSIVE PLEADINGS

IT IS SO ORDERED:

A.    Plaintiff shall serve a copy of this order on each defendant with the summons and complaint and file a certificate of such service. Parties other than plaintiffs who assert claims against others who have not been served with this order shall serve a copy of this order on those against whom they assert claims with the pleading asserting such claims and shall file a certificate of such service.

B.    Within sixty (60) calendar days after the initial pleading is filed, parties of record shall file a scheduling report with copies to opposing parties and the assigned judge. Parties shall confer and are encouraged to file a Joint Scheduling Report, LR3-Form 2.12 NMRA for Track A or LR3-Form 2.13 for Tracks B and C, or, if they cannot agree, file an individual Scheduling Report, LR3-Form 2.13 NMRA. *See* copies of forms attached hereto.

C.    Any party who enters an appearance in the case more than sixty (60) calendar days after the filing of the initial pleading shall file a scheduling report within ten (10) business days and deliver a copy to the assigned judge.

D.      If all parties are not of record within sixty (60) calendar days of the filing of the initial pleading, the *p*arty making claims against the absent parties *(Plaintiff for Defendants, Third-Party Plaintiffs for Third-Party Defendants, etc.*) shall, within five (5) business days after the sixtieth (60th) day, file and serve parties of record and deliver to the assigned judge, a written explanation following LR3-Form 2.14 NMRA, "Delay in Putting the Matter at Issue."

E.      Counsel or parties who do not have attorneys may not stipulate to an enlargement of time greater than fourteen (14) calendar days for the filing of a responsive pleading without a motion and order. The motion shall state with particularity the reason(s) an enlargement is in the best interests of the parties. A copy of the motion and stipulation shall be delivered to all parties as well as counsel. The enlargement requested shall be for a specified time.

F.      When all parties have been joined and the case is at issue, the parties shall immediately notify in writing the assigned judge and the alternative dispute resolution coordinator.

G.      If appropriate, the court will refer this matter to settlement facilitation under Part VI of the Local Rules of the Third Judicial District Court.

H.      Within seventy-five (75) calendar days from the date the initial pleading is filed, or fifteen (15) calendar days after the case is at issue if LR3-Form 2.14 NMRA has been filed, the parties shall either:

      (1)      stipulate to a discovery plan and file the stipulation with the court, or

      (2)      request a hearing to establish a discovery plan pursuant to Paragraph F of Rule 1-026 NMRA.

      (3)      In the absence of a stipulated discovery plan or a timely request from a party for a hearing to establish a discovery plan, the following plan shall go into effect:

            Within one hundred (100) calendar days after the initial pleading was filed or fifteen (15) calendar days after a party has entered the suit, whichever is the later date, each party shall provide to all other parties:

            a.      The name and, if known, the address and telephone number of each individual likely to have discoverable information relevant to disputed issues raised by the

pleadings, identifying the subjects of the information;

b.    A copy of, or a description by category and location of, all documents, data compilations, and tangible things in the possession, custody, or control of the party that are relevant to disputed issues raised by the pleadings;

c.    A computation of any category of damages claimed by the disclosing party, providing copies or making available for inspection and copying the documents or other evidentiary materials and medical records and opinions, not privileged or protected from disclosure, on which such computation is based, including materials bearing on the nature and extent of injuries suffered;

d.    For inspection and copying, any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in the action or to indemnify or reimburse for payments made to satisfy the judgment;

e.    If the medical condition of a party is at issue, such party shall give a medical release authorization to opposing parties. The parties shall confer regarding the nature and extent of the release and stipulate, if possible. If the parties cannot agree, each party shall file a memorandum with a proposed medical release authorization advocating that party's proposed form to the court. A copy of the memorandum and proposed form shall be delivered to the assigned judge. Rule 1-007.1 NIMRA shall apply.

I.    Pursuant to Rule 1-026(E) NMRA, parties shall reasonably supplement discovery required in Subparagraphs (3)(a) through (e) of Paragraph H of this Order.

J.    Intent to Call Expert Witness - Disclosure.    No later than sixty (60) calendar days after filing their respective pleading or responsive pleading, all parties shall exchange a "Notice of Intent to Call Expert Witness(es)". The parties shall list the names, addresses and phone numbers for all anticipated experts, including a brief summary of the subject matter of each witness' testimony. If an expert has not yet been identified by a party, the parties must list the specialized area(s) in which

an expert is anticipated to be retained and a brief summary of the areas or issues on which the expert is expected to testify. With respect to each expert listed, all parties are to observe their continuing duty to timely supplement discovery and shall further abide by the requirements of Section 8 of the attachment to the Rule 16(B) Scheduling Order.

_____
DISTRICT COURT JUDGE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Delivered to Plaintiff on May 3, 2017



Claude Bowman
Clerk of the District Court

_____
, Deputy

LR3-Form 2.12

Supreme Court Approved
August 6, 2004

STATE OF NEW MEXICO
COUNTY OF DOÑA ANA
THIRD JUDICIAL DISTRICT COURT

Plaintiff

vs.

NO.: D-307-CV
Judge:

Defendant

JOINT SCHEDULING REPORT STIPULATING TO TRACK A

Come now all the parties to this case, (by their counsel of record) and stipulate as

follows:

1   The court has subject matter and personal jurisdiction, and venue is proper.

2   This case is appropriate for assignment to Track A

3   The parties do not intend to amend the pleadings or file dispositive motions

4   All parties will be ready for trial *by _____ (no more than six (6) months from filing of complaint)*

5   Witness lists will be exchanged and filed forty-five (45) days before trial

6   Discovery limited to interrogatories, requests for production and admission and no more than two (2) depositions per party.

7   All parties and counsel will either (a) select a facilitator by agreement of the parties, or (b) request the court's ADR coordinator to select a facilitator and will engage in a settlement conference within ninety (90) days from the date of the filing of the complaint. The parties may move for enlargement of time for the settlement conference for good cause shown The parties shall share the facilitator's fee, if any, equally.

8. Exhibits: exchanged at least fifteen (15) days before trial.

   This (jury _____ 6 _____ 12 nonjury _____ ) matter will take _____ hours to try.

9. Conflicting court hearings (or other conflicts which show good cause for not setting trial)

   for two (2) months following the date the matter is ready for trial:

   _____

   _____

10. Other: _____

SUBMITTED BY:

Name of party:     _____
Attorney:     _____
Address:     _____
    _____
Telephone Number     _____


Name of party:     _____
Attorney:     _____
Address:     _____
    _____
Telephone Number     _____

CERTIFICATE OF MAILING

I HEREBY CERTIFY that I mailed, delivered or faxed a copy to the assigned judge and each
party or each party's attorney on the _____ day of _____ , 20 _____

_____
Signature

LR3-Form 2.13. ( _____ 's) (joint) scheduling report.

STATE OF NEW MEXICO
COUNTY OF DOÑA ANA
THIRD JUDICIAL DISTRICT COURT

, Plaintiff

vs.

NO.: D-307-CV

Judge:

, Defendant

( _____'S) (JOINT) SCHEDULING ORDER

1. This case should be assigned to Track _____.
2. Jurisdiction and Venue: _____Stipulated; _____Disputed;
   Why: _____
3. _____Non Jury; _____6-person jury; _____12-person jury.
4. Significant legal issues, if any: _____
   _____
5. Trial witnesses presently known (defendant's, plaintiff's, etc.): _____
   State expert type: _____
6. Settlement:
   _____ [I] [We] have sufficient information to evaluate the case.
   _____ [I] [We] have provided sufficient information for opposing parties to evaluate
   the case.
   _____ [I][We] need the following information from_____to evaluate the
   case: _____

   _____ [I] [We] need the following discovery to obtain information sufficient to
   evaluate the case:
   _____ Explain why such information
   cannot be obtained informally without formal discovery:
   _____
   _____ [I] [We] have scheduled a settlement conference on _____, 20_____
   with_____ *(facilitator)* or have requested the court's ADR
   coordinator to refer to facilitation.
   
   Or
   _____ [I] [We] request that this not be referred to facilitation because:
   _____
   The possibility of settlement is _____ good, _____ fair, _____poor.

7. Discovery:

[I] [We] estimate it will take _____ months to complete discovery. *(Attach discovery plan if stipulated, or request for setting a discovery conference if wanted.)* If any party requests a discovery conference, answer the following:

The party submitting this scheduling report intends to do the following discovery:

_____

*(If this is a joint scheduling report, each party shall answer this question.)*

[Plaintiff] [Defendant] intends to do the following discovery:

_____

8. [I] [We] estimate that trial will take    court days to try-

9. Dates counsel will not be available for trial due to the following conflicting court settings *(beginning with the date immediately following the time you estimate discovery will be completed).* _____

10. Stipulations: _____

11. Other:

_____

SUBMITTED BY:

Name of party:     _____
Attorney:     _____
Address:     _____
    _____
Telephone Number     _____

Name of party:     _____
Attorney:     _____
Address:     _____
    _____
Telephone Number     _____

CERTIFICATE OF MAILING

I HEREBY CERTIFY that I mailed, delivered or faxed a copy to the assigned judge and each party or each party's attorney on the _____ day of _____ , 20 _____

_____
Signature