IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

RUBEN O. FAVELA,

        Plaintiff,

v.                                              CASE NO. 2:17-CV-00568-JB/ SMV

PHC-LAS CRUCES, INC., a New Mexico Corporation,
dba MEMORIAL MEDICAL CENTER, Danielle Wilhelm, M.D.,
Martin Boyd, M.D., James Proctor, R.N., Jamie Pitts, R.N.,
Jose Reveles, R.N., Cassandria Branch, R.N., and John Doe
Security Guards 1 and 2,

        Defendants.

## DEFENDANTS PHC-LAS CRUCES, INC., d/b/a MEMORIAL MEDICAL CENTER, JAMES PROCTOR, RN, JAMIE PITTS, RN, JOSE REVELES, RN, CASSANDRIA BRANCH, RN'S DISCLOSURE OF EXPERT WITNESSES

**COMES NOW** Defendant PHC-LAS CRUCES, INC. d/b/a MEMORIAL MEDICAL CENTER, JAMES PROCTOR, RN, JAMIE PITTS, RN, JOSE REVELES, RN, and CASSANDRIA BRANCH, RN (collectively referred to herein as "MMC Defendants") and pursuant to this Court's April 18, 2019 Order discloses the following Expert Witnesses who may be called to testify at trial in this matter.  The MMC Defendants may use the following persons at trial to present evidence under Federal Rule of Evidence 702, 703, or 705:

### A. Ruben Favela's Currently Known Healthcare Providers

Without stipulating to the admissibility of their opinions or to each persons' qualifications or the relevance and/or reliability of their expert testimony, the following persons may be called to offer expert testimony at the time of trial or at any evidentiary hearing before the court. Each of the following potential witnesses are non-retained experts who are not required to furnish a report, and are disclosed pursuant to disclosure Fed. R. Civ. P. 26(a)(2)(C). As discovery is still progressing, Defendant reserves the right to supplement this list as additional persons are discovered. To the extent any person identified is a defendant or former defendant, each party is expected to testify concerning their interactions with Ruben Favela, and their care and treatment of Ruben Favela. To the extent any person identified is a known healthcare provider of Ruben Favela, each would be anticipated to testify as to their recollections of Mr. Favela and their care and treatment of Ruben Favela and their opinions about his medical history, conditions, plans of care and prognoses. They may offer testimony concerning the histories they obtained, their diagnoses and prognoses. They may also be shown and asked to testify regarding any reports provided, depositions taken in this matter, and relevant medical records, all of which are incorporated herein by reference. It is anticipated that they will testify in accordance with their depositions taken in this matter, which are incorporated herein by reference.

1. **Dr. Danielle Wilhelm**
   Address unknown

   *Treating Physician/Unserved Defendant*

2. All current and former representatives, employees, agents, healthcare providers, nurses, staff and custodian(s) of records for:

   Memorial Medical Center
   c/o J. Scott Mann

2

Kathryn Brack Morrow
KEMP SMITH, LLP
3800 E. Lohman Ave., Suite C
Las Cruces, NM 88011
(575) 527-0023
scott.mann@kempsmith.com
katy.morrow@kempsmith.com

Including but not limited to:

**James Proctor, RN**
**Jamie Pitts, RN**
**Maia Porras, RN**
**Cassandria Branch, RN**
**Jose Reveles, RN**
**Mike Lucero**
**Rob Frederickson**
**Danny Villagrana**
**David Jurney**
**Frankie Saenz**

*Ruben Favela's healthcare providers/MMC employees*

3. All current and former representatives, employees, agents, officers, staff and custodian(s) of records for:

   City of Las Cruces Police Department
   c/o Damian Martinez
   Holt Mynatt Martinez, P.C.
   P.O. Box 2699
   Las Cruces, NM 88004

   > Including but not limited to:
   > **Officer Manuel Soto**
   > **Officer Matthew Dollar**

   *LCPD Officers involved with Plaintiff Favela on date of subject admission*

4. All current and former representatives, employees, agents, healthcare providers, staff and custodian(s) of records for:

   American Medical Response

   > Including but not limited to:

3

       **Robin Woodworth, Paramedic**
       **Keri Alaniz, EMT**

5. **Dr. Martin Boyd**
   Address unknown

   *Treating Provider/Unserved Defendant*

6. Any health care provider identified by any other party or identified within the medical records of Ruben Favela are incorporated herein by reference.

### B. Retained/Specially Employed Experts

The following experts have been retained/specially employed by the MMC Defendants to provide opinions regarding the care rendered to Ruben Favela at Memorial Medical Center on April 13, 2016.

1. **Gary W. Tamkin, MD**
   4 Valley High
   Lafayette, California 94549
   (925) 786-8469

   Dr. Tamkin is anticipated to testify concerning his qualifications as a physician, board certified in emergency medicine, all as outlined in his curriculum vitae and expert report attached hereto as Exhibit "1." Dr. Tamkin will testify regarding Dr. Wilhelm and the MMC Defendants' April 13, 2016 treatment of and care for Ruben Favela. It is anticipated that he will rebut the designated opinions of Dr. May and Laura Burchell-Henson, and any other healthcare provider that intends to offer standard of care and/or causation opinions. MMC Defendants note that those opinions are allegedly contained within Plaintiff's Expert Witness Disclosures and supplemental expert witness disclosures, and are incorporated herein by reference. Dr. Tamkin's opinions are expected to be consistent with those disclosed in his report, and are incorporated herein by reference.

   Dr. Tamkin will testify based on his training, education, experience and knowledge of medical standards, policies and literature. All opinions provided by Dr. Tamkin will be provided to a reasonable degree of medical certainty.

   These opinions are in summary form only. For a detailed recitation of his opinions, please see his deposition, which has not yet been taken. As discovery is ongoing, Dr. Tamkin reserves the right to amend or supplement his opinions in this case at deposition and through trial. He further reserves the right to continue to analyze other depositions that may be taken

or materials that may be produced in this case between the time of this disclosure and the time of trial.

### C. Other Experts

1. Any person(s)/entities identified by any other party or former party, which are incorporated herein.

2. Persons later identified during discovery. Discovery in this case is not yet complete; therefore, MMC Defendants reserve the right to amend this disclosure to list additional expert witnesses.

3. Foundational witnesses as necessary to authenticate documents as necessary.

4. Any person as deemed necessary to impeach or rebut the testimony of any witness.

5. Custodians of records of each person/entity listed above, where applicable.

6. Any other healthcare provider to Mr. Favela whose testimony becomes necessary.

7. Any person whose deposition has been, or will be, taken prior to trial, that intends to offer expert opinions.

                                  Respectfully submitted,

                                  **KEMP SMITH LLP**
                                  3800 E. Lohman Ave., Suite C
                                  Las Cruces, NM  88011
                                  (575) 527-0023
                                  (915) 546.5360 (FAX)

                                By:  /s/ Kathryn Brack Morrow
                                    J. SCOTT MANN
                                    KATHRYN BRACK MORROW
                                    *Attorneys for MMC Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document was served via the Court's electronic mailing service on all counsel of record on this 15th day of July, 2019.

                                       /s/ Kathryn Brack Morrow
                                       KATHRYN BRACK MORROW

**RUBEN O. FAVELA, Plaintiff,**
**VS. -LAS CRUCES, INC. / a New Mexico Corporation, dba MEMORIAL**
**MEDICALCENTER, et. Al**
**Case2zL]-No.CV-OO55B_JBlSMVPHC**

**Gary W. Tamkin, MD, FACEP**
**Board Certified, Emergency Medicine**

I am a board-certified emergency medical physician licensed by the State of California (license# G 078338) and have been so licensed since 1994. I received my B.A. in Community Health with honors from Brown University in 1986. I graduated from the University of California-Irvine College of Medicine with my MD in 1992. I completed my residency in the department of emergency medicine at the University of California San Francisco /Highland General Hospital in 1996, serving as Chief Resident from 1995 to 1996.

I have a current appointment as an Associate Clinical Professor of Emergency Medicine at the UCSF School of Medicine, while serving as an attending physician at Alameda County Medical Center/ Highland General Hospital. I am also the Vice President of Provider Development for VEP Healthcare Inc., a company that staffs 30 emergency departments, overseeing over 1,000 emergency department providers. Currently, I serve as the Statewide Medical Director for the California Highway Patrol and am the SWAT physician for the Merced County Sheriff's Office Regional SWAT team. I have authored numerous Journal articles and taught courses at national meetings. I lecture widely to care providers on the evaluation and treatment of drug ingestions. I am a Past President of The California Chapter of The American College of Emergency Physicians. A copy of my current curriculum vitae is attached.

Having worked for over 25 years as an emergency physician, I am familiar with the standard of care as it applies to the emergency department evaluation of a patient who is in custody and presents with altered mental status as was the case with Mr. Favela in his presentation to Memorial Medical Center on April 13, 2016.

I have been asked by attorney Kathryn Morrow to review documents related to the care and treatment rendered to Mr. Ruben Favela when he presented to Memorial Medical Center on April 13th, 2016 and to render an opinion on the standard of care.

I have reviewed the following medical records and related documents pertaining to the emergency medical care and treatment provided to Plaintiff Ruben Favela:

a. COMPLAINT TO RECOVER DAMAGES FOR DEPRIVATION OF CIVIL RIGHTS AND PERSONAL INJURY. THIRD JUDICIAL DISTRICT COUNTY OF DONA ANA; STATE OF NEW MEXICO: RUBEN O. FAVELA, PLAINTIFF V. CITY OF LAS CRUCES ex rel. LAS Cruces POLICE OFFICERS Matthew Dollar and Manuel Soto, PHC-LAS CRUCES, INC. a New Mexico Corporation, dba MEMORIAL MEDICAL


EXHIBIT 1

CENTER, Daniel Wilhelm, M.D>, James Proctor, R.N., and John Doe Security Guards 1 and 2, Defendants. CASE NO. D-0307-CV-2017-D-307-CV-2017-012 Judge: Arrieta, Manuel I.

b. Memorial Medical Center: Restraint/Seclusion in Patient Management, ADM POL 14-7: 5/2015
c. Memorial Medical Center Consent Policy, ADM POL 6-1American Medical Response: Dona Ana County: Pre-hospital care report: 4/13/2016
d. Memorial Medical Center: Emergency Department Record: 4/13/2016
e. Body Cam Video: Las Cruces PD: 4/13/2016
f. Las Cruces PD Crime/Incident Reports
g. Las Cruces PD Preliminary Inquiry-Compliant by Ruben Favela
h. MMC Surveillance Video of ED
i. Deposition of Ruben Favela
j. Deposition of Manuel Soto
k. Deposition of Michael Lucero
l. Deposition of James Proctor
m. Medical Expert Witness Report, Jason May MD
n. Nursing Expert Witness Report, Laura Burchell-Henson RN
o. Deposition of Maia Porras, RN
p. First Supplemental Response to Plaintiff's First Set of Requests for Production

Based upon my review of the above-referenced materials, my background and training and expertise, I understand the pertinent facts to be as follows:

On April 13th, 2016 at approximately 6:49 p.m. Mr. Favela was driving his motorcycle when he was stopped by Officer Matthew Dollar for running a red light and speeding. Officer Dollar found a handgun in Mr. Favela's waistband. Mr. Favela was placed under arrest for possession of a firearm. Mr. Favela was placed in the backseat of Officer Dollar's patrol car. Mr. Favela began to sweat profusely, and then abruptly lost consciousness. Mr. Favela continued to be unconscious at the scene and EMS was called.

Paramedics from American Medical Response arrived on scene at approximately 7:26 pm. They found Mr. Favela to be unresponsive, and to have abnormal Vital Signs including an increased heart rate at 112 beats per minute and an increased respiratory rate of 28 breaths per minute. Mr. Favela was unresponsive to sternal rubs by police officers and was found to have the lowest possible Glasgow coma score of 3 by paramedics. A blood glucose level was found to be normal at 83. Mr. Favela had minimal or no improvement of his mental status with administration of Naloxone. Mr. Favela was transported by ambulance to Memorial Medical Center for emergency department evaluation.

Mr. Favela arrived at the emergency department at 8:07 p.m. on April 13th, 2016. Mr. Favela's mental status had improved since his evaluation by paramedics- but he continued agitated, uncooperative with the history and exam, and with abnormal vital signs including a heart rate of 128 beats per minute.

Following an initial history and physical exam Dr. Wilhelm assesses Mr. Favela's chief emergent issue issue as altered mental status. Dr. Wilhelm formulates a differential diagnosis that includes alcohol intoxication, drug abuse, and infection. Dr. Wilhelm documents that Mr. Favela is uncooperative and combative and has to be restrained to have blood and urine samples obtained. Handcuffs are removed, and soft restraints are placed. Laboratory evaluation including CBC, chemistry panel, urine drug screen, urine analysis, urine culture, alcohol level, lactic acid, serum ketones, ABG, and Thyroid test.

Abnormal findings of the emergency department evaluation include, a history of loss of consciousness, Increased heart rate, increased respiratory rate, confusion and agitation, an elevated White Blood Cell Count of 12.88 with increased neutrophils, an increased anion Gap of 23 (nl range 6-16), an elevated lactic acid of 2.39, Positive THC and Amphetamine drug screen, and a urine which is positive for blood and ketones.
His condition improves, and he is discharged from the emergency department with the diagnosis of Altered Mental Status unspecified, Adverse effect of amphetamines, and wrist sprain.

At the time of the incident Ruben Favela was a 23-year-old male who presented to the emergency department with altered mental status, agitation, confusion, and abnormal vital signs following a sudden loss of consciousness.

The purpose of Mr. Favela's evaluation was not to gather legal evidence; therefore, his custodial status was irrelevant to the decision making made by Dr. Wilhelm and the actions of the nurses and staff at Memorial Medical Center. Mr. Favela presented with a High-Risk Medical Presentation, and the onus was on the emergency physician to ensure that no emergency medical condition existed. It is common for emergency physicians to undertake aggressive evaluations of patients who are altered and refusing care, who due to their illness may not have the capacity to make medical decisions. This is true both for patients who are and are not in custody and does not require search warrants- as it is not being undertaken for evidence collection.

The providers at Memorial Medical Center appropriately recognized Mr. Favela as having an emergent medical condition. He was agitated, confused, and had significant abnormalities on his laboratory evaluation including elevated white blood cell count, and signs of metabolic acidosis. Mr. Favela lost consciousness again while in the emergency department. The differential diagnosis in a patient such as this certainly would include Sepsis from infection, acute neurologic emergencies, endocrine disorders such as thyroid dysfunction, and substance abuse.

"Individuals are entitled to make decisions about their healthcare if they are deemed competent. Competency is defined as the capacity of a person to act on his/her own behalf; the ability to understand information presented, to appreciate the consequences of acting–or not acting–on that information, and to make a choice. The law usually presumes patient consent in an emergency. Courts have supported emergency physician's actions, without consent, when

the purpose was to preserve the patient's life or health. Courts assume that a reasonable, competent adult would want to be healthy. In a ruling from the Rhode Island Supreme court the justices concluded that, ""A patient's intoxication may have the propensity to impair the patient's ability to give informed consent." Battery is the intentional infliction of a harmful or offensive bodily contact. To be "intentional" simply implies that the actor wanted to do the action, regardless of whether the intent was to help the patient. " (Medical-legal Issues in the Agitated Patient: Cases and Caveats Jessica Thomas, Gregory Moore. West J Emerg Med. 2013 Sep; 14(5): 559–565. doi: 10.5811/westjem.2013.4.16132)

Specifically- the obtaining of urine against Mr. Favela's will was medically Justified and met the conditions of a patient unable to legally consent as described in Memorial Medical Center Consent Policy ADM POL 6-1: which states, *" Factors to be considered in deciding whether a patient has the capacity to consent include whether the patient has shown himself to be a danger to himself or others, and whether the patient has sufficient mental capacity to reasonably understand the condition, the nature and the effect of the proposed treatment, and the risks in pursuing the treatment and not pursuing the treatment. A person who is impaired by mental illness, mental deficiency, physical illness or disability, advanced age, chronic drug use or intoxication, or other cause to the extent that he does not have the mental capacity to understand his condition, the proposed treatment, and attendant risks cannot legally consent"* (Pg.9:P.1)*" Consent should not be obtained at a time when the patient might be considered temporarily incompetent because he or she is under medication, is confused, or is disoriented."* (pg. 5, N1.)

Mr. Favela also met the criteria of an emergency which necessitates medical treatment without express consent as described in the same policy: *"An emergency which necessitates medical treatment without express consent exists when a medical condition manifesting Itself by acute symptoms of sufficient severity such that the absence of immediate medical attention could reasonably be expected to result in: 1. Placing the health of the individual (Or with respect to a pregnant woman the health of her unborn child ) in serious jeopardy, 2.Serious impairment to bodily function, or 3.) serious defense function of any bodily organ or part."* (pg. 9 Q.1.)

The fact that the urine resulted positive for methamphetamine allowed for a diagnosis of Mr. Favela's abnormal behavior to be made based upon methamphetamine intoxication and as well ruled out urosepsis as a cause. Had Mr. Favela's urine tested negative for methamphetamine- Dr. Wilhelm would have been obliged to proceed further in her evaluation to determine the etiology of his altered mental status. This would have included a head CT and a lumbar puncture to evaluate for meningitis. The fact that the urine sample was positive for methamphetamine allowed Dr. Wilhelm at Memorial Medical Center to reasonably stop further evaluation given that they now had an explanation for Mr. Favela's abnormal behavior, exam, and laboratory analysis.

In conclusion-The materials I have reviewed reflect a thorough and thoughtful evaluation of a patient who presented with acute altered mental status, loss of consciousness, and signs of

metabolic acidosis. I don't find any evidence in the chart that Mr. Favela's evaluation against his will was done either punitively or for the sake of gathering legal evidence. The evaluation that was undertaken by Dr. Wilhelm and the staff at Memorial Medical Center was to determine the cause of an emergent medical condition in a patient deemed unable to make medical decisions in his own best interest. The orders written by the physician and carried out by hospital staff were the standard of care for a patient presenting in Mr. Favela's condition. To not have proceeded in the fashion that that the physicians and staff at Memorial Medical Center did would have been cause for medical malpractice.

These opinions are expressed to a reasonable degree of medical probability.

/S/ *Gary W. Tamkin, MD, FACEP*

Gary W. Tamkin, MD, FACEP
Associate Clinical Professor of Emergency Medicine
University of California San Francisco

# GARY WILLIAM TAMKIN, M.D., F.A.C.E.P.

Gary W. Tamkin, MD, Inc.
4 Valley High
Lafayette, California 94549
Email: gtamkin@icloud.com
Cell: (925) 786-8469



## License:

California Lic. #G078338; DEA #BT3935737
Diplomat, American Board of Emergency Medicine
Fellow, American College of Emergency Physicians
Certified Professional Coach

## Education:

**Resident Physician**, Department of Emergency Medicine, Highland General
Hospital/ University of California San Francisco
Oakland, California
June 1992 - July 1996

- **Chief Resident**, 1995 - 1996
- **President,** California Emergency Medicine Resident's Association, 1994 - 1995
- Secretary/Treasurer, California Emergency Medicine Resident's Assoc., 1993 - 1994

**M.D.**, University of California, Irvine College of Medicine
Irvine, California
September 1987 - June 1992

- **Student Body President**, Senior Year
- **Senior Humanitarian Award**, Outstanding Senior
- Society for Academic Emergency Medicine **Award of Excellence**
- **Class President**, Junior Year
- **President**, American Medical Student Association, Irvine Chapter
  Awarded Western Region Outstanding Chapter 1990

**B.A., Brown** University
Providence, Rhode Island
Major: Community Health
September 1982 - June 1986

- **Honors Graduate**

**Graduate**, The Harvard High School
North Hollywood, California
September 1976 - June 1982

- **Student Body President**, Senior Year
- **Head Master's Award**, Outstanding Senior
- **Dartmouth Book Prize**, Outstanding Junior

1

**Continuing Education:**
    Quadruple Aim Physician Academy, 2017
    Core Coach Training, Wellcoaches, 2017
    International School of Tactical Medicine (Tactical Lifesaver, Modules A, B)
    Medical Director Academy, American College of Emergency Physicians, 2005
    Turning Conflict into Cooperation, American College of Physician Executives, 2001
    EMS Medical Director Course, National Association of EMS Physicians, 1998
    Physician Management Seminar I & II, American College of Physician Executives, 1998

## Emergency Medicine Experience:

**Associate Clinical Professor of Emergency Medicine**, Department of Emergency Medicine, University of California San Francisco
    San Francisco, California
    July 2011– Present

**Assistant Clinical Professor of Medicine**, Division of Emergency Medicine, University of California San Francisco
    San Francisco, California
    July 1996 – June 2011

**Medical Director,** California Highway Patrol
    Sacramento, California
    January 2005 – Present

**SWAT Physician,** Merced County Sheriff's Office Regional SWAT Team
    Merced, California
    March 2014 – Present

**Vice- President of Provider Development,** VEP Healthcare, Inc.
    Walnut Creek, California
    January 2011- Present

**Regional Director of Operations,** Valley Emergency Physicians
    Walnut Creek, California
    May 2008-December 2010

**Director,** VEP Healthcare, Inc.
    Walnut Creek, California
    December 2008-December 2013

**Medical Director & Chairman**, Department of Emergency Medicine, Mercy Medical Center Merced
    Merced, California
    December 2004 – Present
        **Immediate Past Chief of Staff**, 2015-2016
        **Chief of Staff**, 2013-2014
        **Vice Chief of Staff**, 2012

**Medical Director & Chairman**, Dept. Emergency Medicine, Emanuel Medical Center
    Turlock, California
    January 2007 – November 2007

**Bay Area Medical Director,** American Medical Response
    Livermore, California
    April 2001 – December 2006

2

**Assistant Medical Director / EMS Medical Director,** Emergency Services, NorthBay Medical Center &VacaValley Hospitals
    Fairfield, California
    July 1997 – December 2003

**Attending Physician,** Alameda County Medical Center/ Highland General
    Hospital
    Oakland, California
    July 1996 - Present

**Physician Consultant,** Vacaville City Fire Department
    Vacaville, California
    August 1998 – December 2001

**Medical Director,** Chabot Paramedic College
    Hayward, California
    January 1999 - April 2001

**Physician Consultant,** Alameda County Sheriff's Department
    Alameda, California
    August 1993 - 1998

**EMS Medical Director,** OEA Aerospace, Inc.
    Fairfield, California
    January 1997 - January 2000

**Director,** Brown Emergency Medical Services
    Providence, Rhode Island
    August 1983 – August 1984

## Emergency Medicine Committees:

**American College of Emergency Physicians,** California Chapter, California
    **Walter T. Edwards Memorial Award, 2006**
        **Highest award by state chapter for meritorious service**

    **Immediate Past President,** 2003 – 2004
    **President,** 2002 - 2003
    **President Elect,** 2001 – 2002
    Treasurer, 2000 – 2001
    Director, 1999 – 2004, 1994 – 1995
    Member, National ACEP By-Laws Committee, 2001 - 2003
    Chairman, 2002 Legislative Leadership Conference
    Co-Chairman, Emergency Medical Services Committee, 1999 - 2000
    Co-Chairman, Membership Committee, 1999 - 2000
    Co-Chairman, 2000 Scientific Assembly, Laguna Niguel, California
    Co-Chairman, 1999 Scientific Assembly, San Diego, California
    Co-Chairman, Membership Committee, 1995 - 1996
    Councilor, National ACEP Council, 1999 – 2003, 1994 – 1995, 2000-2016
    Councilor, Democratic Group Section, National ACEP, 2011

**Solano County Emergency Medical Services Cooperative,** Solano County, California,
    **Board member,** 1996 – 2002

3

**California Emergency Medicine Resident's Association**, California
    **President,** 1994 - 1995
    Secretary/Treasurer, 1993 – 1994

## Selected Emergency Medicine Publications:

Tamkin, G., Emergency Medical Services & Gastroenterological Emergencies in: Pre-Test Self - Assessment and Review: Clinical Emergency Medicine, third edition, S.P. Promes, Ed. The McGraw-Hill Co., New York, N.Y. 2004.

Tamkin, G., Seizure in: Clinical Cases in Emergency Medicine, first edition, B.K.Simon, Ed. The McGraw-Hill Co., New York, N.Y. 2004.

Tamkin, G., Emergency Medical Services & Gastroenterological Emergencies in: Pre-Test Self - Assessment and Review: Clinical Emergency Medicine, second edition, K.L. Koenig, Ed. The McGraw-Hill Co., New York, N.Y. 2000.

Tamkin, G., Reardon, D., The Emergency Department Approach to Nausea and Vomiting in: The Pathophysiology and Clinical Approach to Nausea and Vomiting, V. Heinreich and G. Bloomfield, Eds. The C.V. Mosby Co., St. Louis, MO. 1997.

Tamkin, G., Diarrhea: The Emergency Department Approach to the Acute Scrotum. *Emergency Medicine Magazine*, 2000.

Tamkin, G., Levitt, A., Gee, G., Snoey, E., Prevalence of Cardiac Valve Abnormalities in Asymptomatic Intravenous Drug Users Presenting in an Urban Emergency Department. *Acad Emerg Med,* 1999, 6:9, 911 - 915.

Tamkin, G., Diarrhea: Infection or Food Poisoning? *Emergency Medicine Magazine*, June 1998.

Tamkin, G., Emergency Medical Services Systems. *Lesson in ACEP Critical Decisions in Emergency Medicine,* Vol. XII, Lesson 20, June 1998.

Tamkin, G., Snoey E., Diarrhea. *Lessons in ACEP Critical Decisions in Emergency Medicine,* Vol. XI, Lesson 12, August 1997.

Tamkin, G., Emergency Management of Brown Recluse Spider Bites: A Review. *Global Emergency Medicines Archives*, 1996 (http://www.gema.library.UCSF.edu: 8081).

Promes, SP., Tamkin, G., Koening, KL. A Survey of Pre-hospital Resuscitation Policies in California: Are We Transporting Dead People? *Pre-hosp and Disaster Medicine.* 1994; 9: S64 (abstract). Poster Presentation, National Association of Emergency Medical Service Physicians Annual Meeting, Portland, Oregon, 1994.

Koening, KL. Tamkin, GW., Do-Not-Resuscitate Orders: Where are they in the pre-hospital care setting? *Pre-hosp and Disaster Medicine* 1993; 8:51.

4

## Selected Emergency Medicine Lectures:

| | |
|---|---|
| 2009-Present | **Founder & Director**, VEP Medical Directors Academy. 20-hour leadership course covering all aspects of emergency department operations. Mandatory attendance by all VEP leadership. |
| 3/23/18 | "Trauma in the 'Non-Trauma Center': PEARLs and Pitfalls. 20th Annual Southeastern Seaboard Emergency Nurses Symposium. Virginia Beach, VA. |
| 9/26/18 | "Cop-Tox: What's New on the Street." 2018 Emergency Nurses Association Annual Meeting, Pittsburgh, PA. |
| 9/16/17 | "Quicksilver: How to Achieve an Empty Waiting Room at Peak Hours." 2017 Emergency Nurses Association Annual Meeting, Saint Louis, MO. |
| 9/9/17 | "When Search & Rescue turns Tactical: Providing Care under Fire." Search and Rescue Expo 2017, Los Banos, CA. |
| 10/17/16 | "Bent, Broken, Backed UP: Understanding Male GU Emergencies." 2016 American College of Emergency Physicians Scientific Assembly, Las Vegas, NV. |
| 4/26/14 | "Recovering from Wrong: The ABCs of Resuscitating your Reputation." 2014 American College of Physician Executives Annual Meeting, Chicago, IL. |
| 10/09/12 | "Bridging the Gaps: Understanding the Generational Divide." 2012 American College of Emergency Physicians Scientific Assembly, Denver, CO. |
| 10/10/12 | "Resuscitation for your Reputation: Recovering from Wrong." 2012 American College of Emergency Physicians Scientific Assembly, Denver, CO. |
| 10/18/11 | "What Goes In Must Come Out: Emergency Medicine Tricks of the Urologic Trade." 2011 American College of Emergency Physicians Scientific Assembly, San Francisco, CA. |
| 05/25/11 | "The Acute Scrotum." 2011 UCSF High Risk Emergency Medicine Course, San Francisco, CA. |
| 2008 | "Peer Review: Creating a Department of Excellence." Provided system wide to Valley Emergency Physician client hospitals. |
| 2001-2006 | **Program Chair**, Hot Topics in EMS, and "Lessons from the Street": A Monthly Continuing Education Series for Paramedics and Nurses presented by American Medical Response. |
| 06/05/04 | "Should I Stay, or Should I go…this indecision's buggin me: A Critical review of Pre-Hospital Non-Transport." 2004 Meeting of the American Ambulance Association, Reno, CA. |

5

| | |
|---|---|
| 10/12/99 | "You're the Base Station Physician: What do you do Next? Case Studies in On - Line Medical Control." 1999 American College of Emergency Physicians Scientific Assembly, Las Vegas, CA. |
| 10/14/99 | "The Emergency Department Approach to the diagnosis and Management of the Acute Scrotum." 1999 American College of Emergency Physicians Scientific Assembly, Las Vegas, CA. |
| 10/15/98 | "Acute Diarrhea: Infection or Food Poisoning?" 1998 American College of Emergency Physicians Scientific Assembly, San Diego, CA. |

## Professional Organizations:

- American College of Emergency Physicians
- American Medical & California Medical Associations
- Society for Academic Emergency Medicine
- National Association of EMS Physicians
- International Association for Tactical Emergency Medicine
- Air Medical Physicians Association
- Emergency Medical Directors Association of California
- American College of Physician Executives
- National Eagle Scout Association

6